UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL V. SARKISYAN,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>KRISTI NOEM; PAMELA J. BONDI; THOMAS GILES; JAMES PILKINGTON; WARDEN, GEO GROUP INC., ADELANTO DETENTION FACILITY,<br><br>　　　　　Respondents. | Case No. 2:26-cv-00504-SPG-ADS<br><br>**ORDER GRANTING PETITIONER'S APPLICATION FOR TEMPORARY RESTRAINING ORDER [ECF NO. 5]** |

Before the Court is the Application for Temporary Restraining Order and Preliminary Injunction, (ECF No. 5 ("Motion")), filed by Petitioner Rafael V. Sarkisyan ("Petitioner"). Respondents Kristi Noem, Pamela J. Bondi, Thomas Giles, James Pilkington, and Warden of the Adelanto Detention Facility ("Respondents") do not oppose the Motion. *See* (ECF No. 11 ("Response")). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, relevant law, and the record in this case, the Court GRANTS the Motion.

I. BACKGROUND

The following allegations are taken from Petitioner's Petition for Writ of Habeas Corpus and Petitioner's attached declaration. (ECF No. 1 ("Petition")). Petitioner is ethnically Christian Armenian but was born in the Azerbaijan Soviet Socialist Republic. Petitioner's family fled the Soviet Union and lived as displaced persons for five years before arriving in the United States in 1993, when Petitioner was 13 years old. Petitioner has resided in the United States as a lawful permanent resident and has never returned to Azerbaijan. Petitioner's parents have become United States citizens, and Petitioner has a daughter who is a United States Citizen. (*Id.* at 1).

On June 15, 2015, Petitioner pleaded guilty to three criminal counts and was sentenced to prison. (*Id.* at 16). On October 10, 2017, after serving his prison sentence, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") and was placed in custody for nearly a year before being ordered removed to Azerbaijan by an immigration judge. Petitioner was then held in custody for five more months, as the Government unsuccessfully tried to remove Petitioner to Azerbaijan and Armenia. Petitioner was ultimately released on an order of supervision on January 11, 2019. (*Id.* at 17). Petitioner states that the Azerbaijani Consulate informed ICE that it has no records of Petitioner, and that he is not considered a citizen because he did not report and surrender his Soviet Union passport in 1991 when the country was formed. Since his release, Petitioner has attended all supervision check-ins and has not committed any additional crimes. During annual supervision check-ins in 2020, 2021, 2022, and 2023, ICE agents attempted to contact the Azerbaijani Consulate to secure travel documents but were rebuffed for the same reasons. (*Id.*).

On November 25, 2025, Petitioner was arrested by ICE during a scheduled supervision check-in. (*Id.* at 18). Petitioner was later provided with a Notice of Revocation of Release, which stated that ICE had determined that he should be kept in custody "on account of changed circumstances." (*Id.* at 23). The Notice indicated that, because Petitioner had been "ordered removed by an immigration official" and was "subject to an

administrative final order of removal," it was "expected that [he] will be removed to Azerbaijan or a Third Country in the foreseeable future." (*Id.*). Petitioner states that he did not receive an interview about his case and was not given any opportunity to respond to the notice of detention. (*Id.* at 18).

Petitioner filed the Petition on January 16, 2026, raising claims for violations of due process and federal regulations under the INA. As relief, Petitioner seeks an order requiring his immediate release, a permanent injunction prohibiting Respondents from re-detaining him until they have obtained valid travel documents and complied with the regulations set forth in 8 C.F.R. §§ 241.4 and 241.13, and a permanent injunction prohibiting Respondents from removing Petitioner to any country other than Azerbaijan without following the procedures in 8 U.S.C. § 1231(b)(2). (*Id.* at 13).

Petitioner filed the instant Motion on January 20, 2026, seeking an order of immediate release. (Mot. at 3). On January 22, 2026, Respondents filed their Response, in which they state that they "do not have an opposition argument that they are able to present." (Response at 2). Petitioner replied in support of the Motion on January 23, 2026. (ECF No. 12 ("Reply")).

## II.     LEGAL STANDARD

The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical.") (citation omitted). A plaintiff may secure a temporary restraining order upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction

is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citing *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

In deciding an application for a temporary restraining order, the court is permitted to consider the parties' pleadings, as well as declarations, affidavits, and exhibits submitted in support of and in opposition to the application. *See Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion for a preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties.") (citations omitted); *Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction); *BOKF, NA v. Estes*, 299 F. Supp. 3d 1117, 1122 (D. Nev. 2018). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citations omitted). The urgency of the relief sought necessitates a prompt determination and can make it difficult to obtain admissible evidence. *Id.*

## III. DISCUSSION

### A. Likelihood of Success on the Merits

The Court finds that Petitioner has established a likelihood of success on the merits of his due process claim because he has been detained under § 1231(a)(6) beyond the "presumptively reasonable period of detention" and has demonstrated that there is no significant likelihood of his removal in the reasonably foreseeable future. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." During this 90-day removal period, the Attorney General is required to detain the alien for the purpose of effectuating the alien's removal. *Id.* § 1231(a)(2)(A). After this initial period, certain categories of removable aliens "may be detained beyond the removal period." *Id.* § 1231(a)(6). Although § 1231(a)(6) contains no specific limit on the length of permissible detention, because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court in *Zadvydas* construed the statute "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Zadvydas*, 533 U.S. at 682, 690. During an initial six-month "presumptively reasonable period of detention," the Government may detain an individual under § 1231(a)(6) for purposes of effectuating removal. *Id.* at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Here, including both the five-month period of detention from August 2017 to January 2018 and the current period of detention since November 2025, Petitioner has been detained for approximately seven months. While *Zadvydas* did not explicitly address whether multiple periods of detention can be aggregated to determine the applicable six-month period, most courts to address the question have found that release does not restart the six-month period. *See, e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 722 (W.D. Wash. 2025); *Sied v. Nielsen*, No. 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018); *Asfestani v. Current or Acting Field Off. Dir.*, No. 1:25-cv-1562-SCR, 2025 WL 3677321, at *4 (E.D. Cal. Dec. 18, 2025); *see also Siguenza v. Moniz*, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) (collecting cases across circuits). The Court agrees with this approach. Any contrary rule would effectively permit the Government to avoid the requirements of due process by executing a series of releases and re-detentions. Because Petitioner has been detained more than six months in the aggregate,

Petitioner's detention is outside the presumptively reasonable period recognized by the Supreme Court.

Petitioner has also made a sufficient showing that there is no significant likelihood of removal in the reasonably foreseeable future. As Petitioner attests, ICE has attempted to remove Petitioner to Azerbaijan on multiple occasions and has repeatedly been rebuffed by the Azerbaijan Consulate, which stated that Petitioner is not recognized as a citizen of Azerbaijan. (Petition at 17). Thus, under *Zadvydas*, the burden shifts to the Government to provide evidence to rebut this showing. Respondents have failed to do so and have instead conceded that they are unable to show a legal basis for Petitioner's detention. Accordingly, Petitioner has shown a likelihood of success on his due process claim.[1]

### B.   Irreparable Harm

"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks and citation omitted). "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018). Immigration detention also imposes collateral irreparable harms on the families of the detainee, including economic burdens and harm to children. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Here, Petitioner has been unlawfully detained in violation of his due process rights. Thus, Petitioner has suffered irreparable harm as a result of his detention and will continue to suffer the harm absent relief. As such, the second *Winter* factor weighs in Petitioner's favor.

---

[1] While not necessary to the Court's conclusion, the Court also notes that ICE has apparently violated its own regulations in re-detaining Petitioner without providing Petitioner with an "initial informal interview promptly" after re-detaining Petitioner. 8 C.F.R. § 241.13(i)(3); *see* (Petition at 18 (stating that Petitioner "did not have an interview with anyone" and "was not given an opportunity to respond to the notification of detention")). This procedural violation is an independent basis for granting Petitioner the requested relief.

### C.  Balance of the Equities and Public Interest

When the Government is the party opposing the relief sought, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As the Ninth Circuit has explained, "it is always in the public interest to prevent the violation of a party's constitutional rights," and "[t]he government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). Given the Court's finding that Petitioner is likely to succeed on the merits of his due process claim, and in the absence of any countervailing interests identified by Respondents, the Court concludes that Petitioner's concrete harm outweighs any interest that Respondents may have.

On balance, the *Winter* factors weigh in Petitioner's favor. The Court therefore GRANTS Petitioner's Motion insofar as it seeks Petitioner's immediate release.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's Motion and ORDERS as follows:

1. Respondents are ORDERED to immediately release Petitioner from custody and restore him to the status quo prior to his re-detention by reinstating his prior order of supervision;

2. Respondents are ENJOINED AND RESTRAINED from removing Petitioner or taking him from the Central District of California pending adjudication of his Petition;

3. Respondents are ORDERED TO SHOW CAUSE in writing no later than seven (7) days from the date of this Order why the Court should not issue a preliminary injunction. Petitioner may file a Reply no later than ten (10) days from the date of this Order. The Court sets a hearing on whether a preliminary injunction should issue for Wednesday, February 11, at 10:00 a.m. The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the TRO; and

4. The Court waives the discretionary security bond contemplated by Federal Rule of Civil Procedure 65(c) because it is unlikely that the Government will incur any significant cost and requiring a bond "would have a negative impact on [Petitioner's] constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996).

**IT IS SO ORDERED.**

DATED: January 27, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE