UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL V. SARKISYAN,<br><br>                Petitioner,<br><br>    v.<br><br>KRISTI NOEM; PAMELA J. BONDI; THOMAS GILES; JAMES PILKINGTON; WARDEN, GEO GROUP INC., ADELANTO DETENTION FACILITY,<br><br>                Respondents. | Case No. 2:26-cv-00504-SPG-ADS<br><br>**ORDER GRANTING APPLICATION FOR PRELIMINARY INJUNCTION [ECF NO. 5]** |

Before the Court is the Application for Temporary Restraining Order and Preliminary Injunction, (ECF No. 5 ("Motion")), filed by Petitioner Rafael V. Sarkisyan ("Petitioner"). On January 27, 2026, the Court granted Petitioner's request for a Temporary Restraining Order ("TRO") and ordered Respondents to show cause why a preliminary injunction should not issue. (ECF No. 14 ("TRO Order")). Respondents filed an opposition to the Preliminary Injunction on February 2, 2026, indicating that Petitioner has been released from custody pursuant to the TRO and arguing that the underlying habeas petition should now be dismissed as moot. (ECF No. 15 ("Opposition")). The Court has read and considered the Motion and concluded that it is suitable for decision without oral

argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

**I.    BACKGROUND**

On January 16, 2026, Petitioner filed a Petition for Writ of Habeas Corpus, (ECF No. 1 ("Petition")), naming Respondents Kristi Noem, Secretary of Homeland Security; Pamela J. Bondi, Attorney General of the United States; Thomas Giles, Los Angeles Field Office Director, Bureau of Immigration and Customs Enforcement ("ICE"); James Pilkington, Assistant Field Office Director, Adelanto Detention Facility; and Warden, Geo Group Inc., Adelanto Detention Facility ("Respondents").

In the Petition, Petitioner alleges that he was born in the Azerbaijan Soviet Socialist Republic and fled with his family to the United States in 1993, when he was 13 years old. (*Id.* at 1). Petitioner has since resided in the United States as a lawful permanent resident and has never returned to Azerbaijan. (*Id.*). On June 15, 2015, Petitioner pleaded guilty to three criminal counts and was sentenced to prison. (*Id.* at 16). After completing his sentence, Petitioner was detained by ICE and placed in custody for nearly a year before being ordered removed to Azerbaijan. (*Id.* at 17). While ICE attempted to effectuate Petitioner's removal to Azerbaijan, it was unable to do so and ultimately released Petitioner on an order of supervision on January 11, 2019. (*Id.*). Petitioner attests that the Azerbaijani Consulate has repeatedly informed ICE during Petitioner's yearly check-ins that it will not accept Petitioner because he is not considered a citizen of the country. (*Id.*).

On November 25, 2025, Petitioner was arrested by ICE during a scheduled supervision check-in, purportedly due to "changed circumstances" regarding the likelihood of his removal. (*Id.* at 18). Petitioner filed the Petition on January 16, 2026, raising claims for violations of due process and federal regulations. As relief, Petitioner seeks an order requiring his immediate release, a permanent injunction prohibiting Respondents from re-detaining him until they have obtained valid travel documents and complied with regulations set forth at 8 C.F.R. §§ 241.13 and 241.4, and a permanent injunction prohibiting Respondents from removing Petitioner to any country other than Azerbaijan

without following the procedures set forth in 8 U.S.C. § 1231(b)(2). (*Id.* at 13). In addition to the Petition, Petitioner filed an Application for Temporary Restraining Order and Preliminary Injunction, which sought an order of immediate release on an interim basis. (Mot. at 3).

On January 27, 2026, the Court granted the Motion and issued a temporary restraining order. (TRO Order). The Court first found that Petitioner had established a likelihood of success on the merits of his due process claim because he had been detained pursuant to 8 U.S.C. § 1231(a)(6) beyond the presumptively reasonable period of detention recognized in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). (*Id.* at 4-6). The Court found that Petitioner had put forth sufficient evidence showing that there was no significant likelihood of removal in the reasonably foreseeable future, which shifted the burden to Respondents to rebut Petitioner's showing. Respondents failed to do so, instead conceding that they did "not have an opposition argument that they are able to present." (ECF No. 11 at 2). Second, the Court found that Petitioner would suffer irreparable harm in the absence of a temporary restraining order because his likely unlawful detention would deprive him of his constitutional rights and cause collateral harm to his family. (TRO Order at 6). Lastly, the Court found that the balance of equities and public interest heavily favored Petitioner, particularly given the absence of any contrary argument from Respondents. (*Id.* at 7). Based on these findings, the Court ordered Respondents to immediately release Petitioner, enjoined Respondents from removing Petitioner or taking him from this District pending adjudication of his Petition, and ordered Respondents to show cause why a preliminary injunction should not issue. (*Id.*).

Respondents filed a response to the order to show cause on February 2, 2026. (Opp.). In their Response, Respondents state that Petitioner has been released from custody, and they argue that the Petition should now be dismissed as moot and no preliminary injunction should issue. (*Id.* at 2-4). Petitioner replied on February 6, 2026, arguing that the Petition is not moot because Petitioner continues to face a significant threat of re-detention and

faces a continued restraint on his liberty due to the conditions of his release. (ECF No. 16 ("Reply")).

## II. LEGAL STANDARD

The standard for issuing a preliminary injunction is essentially the same as that for issuing a temporary restraining order. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). Thus, a petitioner may secure a preliminary injunction upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[S]erious questions going to the merits and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction," so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

## III. DISCUSSION

In their Opposition, Respondents do not address any of the above standards for issuing a preliminary injunction. Instead, they assert that "[b]ecause the Respondents released and have not re-detained Petitioner, the alleged injury—the detention itself—has ended, and there is no further relief for this Court to provide." (Opp. at 2). Respondents

do not offer any other arguments why the Court should not issue a preliminary injunction.[1] See (*id.*).

Whether Respondents' release of Petitioner from custody pursuant to the TRO caused the Petition to be moot depends on whether the Petition continues to present a case or controversy under Article III, § 2 of the United States Constitution. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Thus, "[t]o maintain an extant claim, a litigant must continue to have a personal stake in the outcome of the suit throughout all stages of federal judicial proceedings." *Abdala v. INS*, 488 F.3d 1061, 1064-65 (9th Cir. 2007) (internal quotation marks omitted). "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7 (internal quotation marks omitted).

The Court concludes that the Petition continues to pose a live controversy. The fact that a habeas petitioner has been temporarily released from custody pursuant to a TRO or preliminary injunction does not necessarily moot the case. *See Nielsen v. Preap*, 586 U.S. 392, 403 (2019). This is because these forms of preliminary relief "do not conclusively resolve legal disputes," but instead involve only a determination that "a plaintiff is *likely* to succeed on the merits." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025). Preliminary relief thus serves only to "preserve the relative positions of the parties until a trial on the merits can be held" and should not be taken as "tantamount to [a] decision[] on the underlying merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394-95 (1981). Because a TRO involves no final determination of the merits and has no continuing effect beyond the initial 14-day period, there may still be a live controversy as to any remaining requests for relief.

---

[1] Respondents have thus conceded that, if the Court finds that the case is not moot, a preliminary injunction should issue based on the Court's previous analysis in the TRO, which remains the same, given that Respondents have not shown the factual circumstances—other than Petitioner's release—have changed.

*See Armster v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 806 F.2d 1347, 1357 (9th Cir. 1986) ("[C]ases in which a type of judgment with continuing force, such as an injunction, is sought . . . do not become moot merely because the defendant's conduct immediately complained of has terminated, if there is a possibility of a recurrence which would be within the terms of a proper decree." (internal quotation marks, citation, and alterations omitted)). Any contrary rule would force habeas petitioners to choose between seeking immediate release, thereby mooting any requests for prospective relief, or foregoing preliminary relief to receive adjudication of their entire petition. Habeas relief need not be so limited. *See Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) ("[H]abeas corpus relief is not limited to immediate release from illegal custody, but [] the writ is available as well to attack future confinement.").

Here, the Petition sought permanent, prospective relief, including an order prohibiting Petitioner's re-detention until Respondents have obtained travel documents and complied with the requirements of 8 C.F.R. §§ 241.13 and 241.4. (Petition at 13). In ordering Petitioner's release, the TRO only granted Petitioner partial, interim relief to maintain the status quo pending the Court's adjudication of the Petition. This relief is, "by definition, temporary." *Ortiz Martinez v. Wamsley*, No. 2:25-cv-01822-TMC, 2025 WL 2899116, at *4 (W.D. Wash. Oct. 10, 2025); *see* Fed. R. Civ. P. 65(b)(2) ("The order expires at the time after entry—not to exceed 14 days—that the court sets."). Once lapsed, the TRO would not prevent Respondents from re-detaining Petitioner and transferring Petitioner outside the jurisdiction of the Central District. *See Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *3 n.5 (C.D. Cal. Sept. 26, 2025) ("Given the TRO's expiration . . . the necessity of further injunctive relief maintaining the status quo during the pendency of litigation means the claim is necessarily *not* moot."); *Min v. Santacruz*, No. 2:25-CV-10971-MEMF-AS, 2025 WL 3764071, at *2 (C.D. Cal. Dec. 23, 2025) ("[T]he TRO, like the requested preliminary injunction, is inherently temporary; neither would outlive this case.").

Given that the TRO in this case will expire after 14 days, in the absence of a preliminary injunction, the only check on Petitioner's re-detention would be Respondents' voluntary cessation of their efforts to detain Petitioner. But as the Supreme Court has explained, "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1989). Rather, voluntary cessation only renders a case moot "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). It is the party claiming that its voluntary compliance moots a case that bears the "formidable burden" to make this showing. *Friends of the Earth, Inc. v. Laidla Env't Servs., Inc.*, 528 U.S. 167, 190 (2000). Respondents have not attempted to meet this burden, as they offer no assurance that they will not re-detain Petitioner absent further relief, much less a sworn declaration from an official qualified to make such a statement. *Cf. Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (finding voluntary cessation exception to mootness did not apply where the "government filed a declaration of the director of the Los Angeles District Office of the INS" attesting that the government would not re-detain the petitioner absent certain circumstances).

Thus, as numerous other courts in this District have held, in light of the incomplete and temporary nature of the preliminary relief granted in the TRO Order, Petitioner's request in his Petition for prospective relief, and the lack of any binding assurances that Respondents will not repeat their actions, this Petition is not moot. *See, e.g.*, *Esmail*, 2025 WL 3030589, at *3 n.5; *Min*, 2025 WL 3764071, at *2; *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 3443146, at *2 (C.D. Cal. Dec. 1, 2025); *Marin v. Noem*, No. 2:25-cv-09343-CV (SSCx), 2025 WL 3152261, at *2 (C.D. Cal. Oct. 21, 2025); *Im v. Semaia*, No. 5:25-cv-2733-JAK (Ex), 2026 WL 183856, at *1 (C.D. Cal. Jan. 23, 2026); *Pogosian v. Bowen*, No. 5:25-cv-03380-DOC-DTB, 2026 WL 161436, at *1 (C.D. Cal. Jan. 21, 2026).

Having found that the Petition is not moot, the Court otherwise concludes that a preliminary injunction should issue. In the absence of any contrary argument from Respondents, the Court adopts the reasoning articulated in the TRO Order and concludes that Petitioner is likely to succeed on the merits of his due process claim, that Petitioner faces irreparable harm absent injunctive relief, and that the balance of the equities and the public interest favors entering an injunction. *See* (TRO Order at 4-7).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's Motion for a preliminary injunction and ORDERS that, for the duration of this case:

1. Respondents are ENJOINED from re-detaining Petitioner without timely following the procedures in 8 C.F.R. §§ 241.4(l) and 241.13(i) and obtaining valid travel documents;

2. Respondents are ENJOINED from removing Petitioner to any country other than Azerbaijan without first following the consecutive procedures of 8 U.S.C. § 1231(b)(2); and

3. The parties are directed to follow the orders of the Magistrate Judge regarding further proceedings.

**IT IS SO ORDERED.**

DATED: February 10, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE